MARIO HERNANDEZ VELAZQUEZ,     )
                              )
          *Petitioner,*     )
                              )
v.                       )     Nos. 2:10-CR-110
                              )     2:15-CV-140
                              )
                              )
UNITED STATES OF AMERICA,     )
                              )
          *Respondent.*     )

## <u>MEMORANDUM OPINION</u>

Pending before the Court is the motion of Mario Hernandez Velazquez ("Velazquez" or "Petitioner"), a federal inmate, to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 [Doc. 1184]. The Court finds the materials thus submitted, together with the record of the underlying criminal case (2:10-CR-110), conclusively show Velazquez is not entitled to relief on any of the claims asserted in his petition. Accordingly, the Court will decide this matter without an evidentiary hearing, see *United States v. Todaro,* 982 F.2d 1025, 1028 (6th Cir. 1993), and will DENY Velazquez's motion for the following reasons.

## I.    PROCEDURAL AND FACTUAL BACKGROUND

A federal grand jury indicted Velazquez on January 11, 2011, charging him with conspiring to distribute and possess with the intent to distribute at least five kilograms of cocaine, in violation of 21 U.S.C. § 846, 841(a)(1), (b)(1)(A) (Count One); five counts of distributing cocaine and/or cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) (Counts 43, 48, 53, 58, and 105); possessing with the intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) (Count 131); two counts of possessing a firearm in furtherance of a drug trafficking offense in

violation of 18 U.S.C. § 924(c) (Counts 106 and 132); and one count of using and carrying a firearm and ammunition as an illegal alien in violation of 18 U.S.C. §§ 922(g)(5)(a) and 924(a)(2) (Counts 133 and 134).

After a three-day jury trial, Velazquez was convicted of all counts [Doc. 1050]. A Presentence Report calculated Velazquez's sentencing guideline range to be 795 – 828 months. Specifically, it found he faced 135-168 months on the drug convictions, 60 months consecutive on Count 54, for using and carrying a firearm during and in relation to a drug trafficking crime; 300 months consecutive on Count 106, for possessing a firearm in furtherance of a drug trafficking crime; and another 300 months consecutive on Count 132, for possessing a firearm in furtherance of a drug trafficking crime.[1] It noted that Velazquez faced a statutory mandatory minimum for these convictions of 780 months.

Velazquez's counsel filed a detailed sentencing memorandum asking the Court for a variance from his guideline range. After considering the 18 U.S.C. § 3553 factors, the District Court sentenced Velazquez to the minimum sentence provided for in the statute, that is, 780 months [Doc. 1083].

Velazquez timely appealed his conviction. On appeal, he challenged the sufficiency of the evidence supporting five of the twelve counts of conviction, *i.e.* conspiracy to distribute over five kilograms or more of cocaine (count 1); using and carrying a firearm during and in relation to a

---

[1]    18 U.S.C. § 924(c)(1)(A) requires the sentence for possessing a firearm in furtherance of a drug trafficking crime to run consecutive to the underlying drug trafficking crime and any sentence for any subsequent conviction under § 924(c)(1)(A) may not run concurrently with any other term of imprisonment. See 18 U.S.C. § 924(c)(1)(D). Thus, the 120 month minimum mandatory term of imprisonment must run consecutive to the 60 month term of imprisonment on the first § 924(c)(1)(A) conviction, which must run consecutive to the 300 month term of imprisonment on the second § 924(c)(1)(A) conviction, which must run consecutive to the 300 month term of imprisonment for the third § 924(c)(1)(A) conviction. This gives a total effective minimum mandatory sentence of 780 months.

drug trafficking crime (count 54); possessing a firearm in furtherance of a drug trafficking crime (counts 106 and 132); and distribution of cocaine base (count 58). He also challenged the district court's admission of a tape-recorded conversation between Velazquez and two co-conspirators; the district court's submission of an improper verdict form for counts 106 and 132; and the reasonableness of his sentence. [Doc. 1135, pg. 1-2].

On the sufficiency of the evidence challenge, the Sixth Circuit affirmed his convictions. Regarding the evidence introduced showing Velazquez's involvement in the drug conspiracy, it accurately summarized the evidence introduced at trial against Velazquez as follows:

> The government presented sufficient evidence to prove beyond a reasonable doubt that Velazquez conspired to distribute over five kilograms or more of cocaine. The government introduced multiple recorded conversations and video recordings that connected Velazquez to the conspiracy and established the scope of the conspiracy. In one recorded conversation, Velazquez told a confidential informant (CI) that he was "business friends" with the person "they call Primo," who FBI Special Agent Allen Pack identified at trial as Tomas Estrada Sarabia, the lead co-conspirator. Law enforcement officers intercepted "several" telephone calls between Velazquez and Sarabia over a three-month period in 2010. In one call, Velazquez asked Sarabia to "continue selling to [him]." Velazquez also told the CI that he sold drugs "every day." Velazquez stated: "[P]eople don't just buy a little bits [sic] from me, they buy halves [half ounces of cocaine] . . . [t]hey buy ones [ounces of cocaine]." Velazquez also told the CI that a month earlier someone broke into Velazquez's residence and stole from him two kilograms of cocaine. Special Agent Pack testified that police seized over three-and-a-half kilograms of cocaine from Sarabia and other co-conspirators. Further, Special Agent Pack testified that CIs purchased approximately a kilogram of cocaine from Sarabia and his "right-hand man," Antonio Herrera. Law enforcement officers also intercepted "numerous" calls between Sarabia and another co-conspirator, Manual Burelo, "discussing large quantities of cocaine" for Burelo to purchase from Sarabia. Additionally, 20.7 grams of cocaine were recovered from Velazquez's residence and an additional 16.19 grams of cocaine were purchased from Velazquez in controlled buys.

[Doc. 1135, pg. 2-3]. The Sixth Circuit then summarized the evidence against Velazquez regarding his involvement in the possession of firearms in furtherance of a drug trafficking offense and his using and carrying a firearm during and in relation to a drug trafficking offense:

The government also produced sufficient evidence to prove beyond a reasonable doubt Velazquez's convictions for using and carrying a firearm during and in relation to a drug trafficking crime and possessing a firearm in furtherance of a drug trafficking crime.

…

The evidence at trial established that Velazquez was carrying a firearm at the time he met the CI on this date. During the transaction, Velazquez said that he was always armed in case somebody would try to rob him. This evidence was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the firearm facilitated or had the potential to facilitate the drug trafficking offense.
…

The evidence at trial established that, on both dates [October 6 and 22, 2010, the dates listed in counts 106 and 132], Velazquez had a .40 caliber firearm in close vicinity to where he was selling drugs. On October 6, 2010, Velazquez told the CI about another drug-dealer who had been robbed and said that he would blow "to hell" anyone who tried to rob him. Velazquez also stated to the CI that "not many idiots are going to withstand two or three bullets." … The evidence was sufficient for a reasonable juror to find beyond a reasonable doubt that Velazquez possessed a firearm to further his trafficking in drugs.

Furthermore, the government produced sufficient evidence to prove beyond a reasonable doubt that Velazquez distributed cocaine base. … Velazquez does not dispute that the substance he sold to the CI on May 13, 2010, tested positive for cocaine base. He argues instead that he did not know that the substance he sold to the CI on that date was cocaine base. Velazquez's argument fails because whether he believed he was selling cocaine or cocaine base is irrelevant for a conviction under § 841(a)(1).

[Doc. 1135, p. 4].

The Sixth Circuit also affirmed Velazquez's 780-month sentence. Although he had asked the district court to vary from the guidelines, the Sixth Circuit noted that the "sentence was largely driven by the consecutive mandatory minimum sentences that he faced on three counts, *i.e.*, 60 months of imprisonment on count 54, 300 months of imprisonment on count 106, and 300 months of imprisonment on count 132." [Doc. 1135, pg. 6]. The Sixth Circuit noted that "District Courts are constrained by mandatory minimums." *Id.* It noted that the District Court properly considered Velazquez's history and personal characteristics in reaching its sentence and acknowledged that

the 780 months was below his Guidelines range of 795-828 months of imprisonment. *Id.*

The Sixth Circuit entered the final judgment on February 6, 2014. On May 7, 2015, Velazquez timely filed this § 2255 petition. He later filed a supplement on April 11, 2016 [Doc. 1217].

## II.     STANDARD OF REVIEW

This Court must vacate and set aside Petitioner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack…" 28 U.S.C. § 2255. Under Rule 4 of the Governing Rules, the Court is to consider initially whether the fact of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the Court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo,* 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F.Supp. 167, 171 (W.D. Tenn. 1996). To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir.

1994). *See also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F.2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978). To warrant relief for a non-constitutional error, petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F.3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 152 (1982).

## III.     VELAZQUEZ'S MOTION TO VACATE UNDER 28 U.S.C. § 2255

## A.     Velazquez's first § 2255 motion filed on May 7, 2015

In his first motion to vacate filed on May 7, 2015 [Doc. 1184], Velazquez argues that the "District Court pursuant to 18 U.S.C. § 3553(a) should have used discretion and was (free) to (disagree) with the Guidelines and impose a below-guidelines sentence in this case." [Doc. 1184, pg. 3].  In support he cites to *Kimbrough v. United States*, 552 U.S. 85 (2007) and *Gall v. United States*, 552 U.S. 38 (2007), arguing that these cases support his claim that the district court could have disagreed with the guidelines and imposed a below-guidelines sentence.

He then cites to *United States v. Holloway,* 68 F. Supp. 3d 310 (E.D.N.Y. 2014).  In *Holloway*, the United States agreed that two of Holloways' § 924(c) convictions could be vacated and set aside based on his post-sentence conduct and rehabilitation.  Holloway was resentenced as a result.  Velazquez compares himself to Holloway and asks the Court to give him the same relief. Velazquez does not otherwise challenge any other aspects of his conviction or sentence in his initial § 2255 motion.

The United States filed a response [Doc. 1198] objecting to the relief sought. It noted that his § 2255 motion raises the same sentencing issues he raised before the Sixth Circuit.  [Doc. 1198,

pg. 5].

**B.      Velazquez's "Supplemental" § 2255 motion**

On April 11, 2016, almost a year after the statute of limitations expired on his § 2255 motion, Velazquez filed a 41-page supplement to his initial § 2255 raising additional issues not previously raised [Doc. 1217].  While it is difficult to decipher exactly all of his issues in this supplement, it appears he raises a number of issues:  (1) the Fair Sentencing Act of 2010 equalizes penalties for crack and cocaine powder offenses for which he should receive the benefit;  (2) his enhanced sentence is contrary to the Supreme Court decisions in *Alleyne v. United States*, 570 U.S. 99 (2013) and *Descamps v. United States*, 570 U.S. 254 (2013); (3) his sentence is in violation "under *Johnson v. United States;*" [Doc. 1217, pg. 13] (4) that his sentence was unreasonable and in violation of the Eighth Amendment's prohibition against cruel and unusual punishment; [*id*. at 13, 15]; (5) that he received ineffective assistance of counsel; (6) the Second Amendment protects his right to bear arms and precludes a conviction under §  922(g); (7) that the Fourth Amendment was violated by using a confidential informant in his residence; (8) that the double jeopardy clause was violated based on his being convicted for the conspiracy charge and for the underlying substantive sales of cocaine and for his multiple convictions under § 924(c)(1)(A) [Doc. 1217, pg. 24]; (9) that his Sixth Amendment right to a speedy trial as well as the Speedy Trial Act, 18 U.S.C. § 3161 were violated [Doc. 1217, pg. 29]; and (10) his Sixth Amendment right to confrontation was violated [Doc. 1217, pg. 34]; (11) that the United States should treat him the same as the defendant in *United States v. Holloway,* 68 F. Supp. 3d 310, 311 (E.D.N.Y. 2014); and (12) that the translations of his conversations were not literal but should have been.

The United States again filed a response, objecting to the Court considering the supplement, arguing it was filed untimely. [Doc. 1231, pg. 4].  It noted that the amendment was

filed more than one year after his judgment became final and that given the type of issues it raises, it does not relate back to the original filing under Fed.R.Civ.P. 15(c)(2). The United States further claimed that these new claims are not adequately developed to even permit the Court to engage in any meaningful review and that they are procedurally defaulted in any event. [Doc. 1231, pg. 5-6]. Finally, it claimed that they are due to be denied as they are without merit. [Doc. 1231, pg. 7-13].

## IV.    ANALYSIS

### A.    Velazquez's initial § 2255 claim that the District Court should have varied from the Sentencing Guidelines and sentenced him to a reduced sentence.

Velazquez's first issue raised in his initial § 2255 is that the District Court should have varied from the Guidelines and sentenced him to a below-guideline sentence. As an initial matter, Velazquez raised this issue before the Sixth Circuit, which denied his claim. "A § 2255 motion may not be used to relitigate an issue that was raised on appeal absent highly exceptional circumstances." *Dupont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996). He has not shown any exceptional circumstance that would warrant revisiting this issue.

Even if the Court were to able to reach the issue, it is without merit. The PSR calculated Petitioner's sentencing guideline range to be 795 to 828 months of imprisonment. He did not file an objection to this range. Instead, his attorney requested the Court to vary from the guidelines. That is exactly what the District Court did in this case. In sentencing Velazquez to 780 months, it sentenced him to a below-guideline sentence. In fact, the District Court sentenced him to the minimum mandatory term of imprisonment based on his § 924(c) convictions. In other words, the District Court could not have sentenced him to anything less than 780 months.[2]

---

[2]    The Court sentenced Velazquez to the minimum mandatory 10 years on the conspiracy count, to the minimum 5 years consecutive on the using or carrying a firearm in relation to a drug

On appeal, the Sixth Circuit rejected Velazquez's argument that his sentence was unreasonable. Velazquez was sentenced to 780 months of imprisonment, below his guidelines range of 795 to 828 months of imprisonment. This sentence was largely driven by the consecutive mandatory minimums that he faced on three counts: 60 months of imprisonment on Count 54, 300 months of imprisonment on Count 106, and 300 months of imprisonment on Count 132. The Sixth Circuit noted that district courts are bound by mandatory minimums. *Id.* citing *Kimbrough v. United States*, 552 U.S. 85, 108 (2007). The Sixth Circuit concluded that Velazquez "has not shown that his sentence resulted from an abuse of discretion," and affirmed the sentence. Velazquez's argument that his sentence was unreasonable or that the Court should have departed even further is without merit.

**B.      The April 11, 2016, Supplemental Motion [Doc. 1217].**

> **1.      Relation Back of Velazquez's April 11, 2016 Supplement under Fed.R.Civ.P. 15(c).**

The final judgment was entered in this case on February 6, 2014 and the judgment became final 90 days after entry of the judgment or May 7, 2014. Where, as here, Velazquez pursued a direct appeal but did not petition the United States Supreme Court for a writ of certiorari, the judgment becomes final when the time expired for filing a petition for a writ of certiorari. *Clay v. United States*, 537 U.S. 522, 532 (2003). Such a petition is timely when it is filed within 90 days after entry of the appellate court's judgment. Sup. Ct. R. 13(3). His supplement was filed on April 11, 2016, clearly outside that time period.

Without requesting permission to amend his initial § 2255 motion, on April 11, 2016, Velazquez filed another motion raising new challenges to his conviction and sentence [Doc. 1217].

---

trafficking offense, and 300 months consecutive on each the possession of a firearm in furtherance of a drug trafficking offense. That totals 780 months (120 + 60 + 300 + 300).

The Court considers this a motion to amend his initial § 2255 motion. A motion to amend a § 2255 motion is governed by Fed. R. Civ. P. 15. *See* 28 U.S.C. § 2242. Per Fed. R. Civ. P. 15(a)(2), a court should "freely give leave" to amend "when justice so requires." "Decisions as to when justice requires amendment are left to the sound discretion of the trial judge." *Robinson v. Michigan Consol. Gas Co. Inc.*, 918 F.2d 579, 591 (6th Cir. 1990). However, leave to amend should "be denied when the amendment would be futile." *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 633 (6th Cir. 2009) (quoting *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995)). The Sixth Circuit held that an attempt to amend a § 2255 motion is futile if it is barred by the one-year statute of limitations of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2255(f)(1). See *Oleson v. United States*, 27 F.App'x 566, 570 (6th Cir. 2001) (holding that a motion to amend was futile because it was barred by the AEDPA one-year statute of limitations).

Thus, the issue is whether this supplement relates back to his initial § 2255 motion. "Rule 15(c)(2) relaxes, but does not obliterate, the statute of limitations; hence relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." *Mayle v. Felix*, 545 U.S. 644, 659 (2005). An amendment that "asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth" does not relate back. *Id*. at 650.

In this case, Velazquez's initial § 2255 motion only addressed the reasonableness and constitutionality of his sentence, that the District Court should have varied further from the sentencing guidelines, and the case *United States v. Holloway* authorized the Court to vacate two of his § 924(c) convictions. He did not address any other issue. His supplemental pleading, however, raises at new grounds for relief that are supported by facts that differ in type from those

set forth in the original pleading.   Thus, the Court finds that they do not relate back and the Court is not required to consider them at all.

### 2.   The Grounds for Relief alleged in the Supplement

Even though the Court is not required to address the issues raised in the supplemental motion, the Court will nevertheless do so in turn.

### a.   The Fair Sentencing Act of 2010

Velazquez claims that his sentence is in violation of the Fair Sentencing Act of 2010.  On August 3, 2010, Congress enacted the Fair Sentencing Act ("FSA") with the intent "to restore fairness to federal cocaine sentencing." Pub.L. 111-120, 124 Stat. 2372 (2010). The effect of the FSA was to increase the threshold for the application of the 10-year mandatory minimum from 50 grams of crack cocaine to 280 grams of crack cocaine and the 5-year mandatory minimum from 5 grams of crack cocaine to 28 grams of crack cocaine. Compare 21 U.S.C. § 841(b)(1)(A)-(C) (effective Aug. 3, 2010), with 21 U.S.C. § 841(b)(1)(A)-(C) (effective April 15, 2009 to Aug. 2, 2010).

Velazquez was convicted in Count 1 of a conspiracy to distribute and possess with the intent to distribute 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). The punishment he faced for a violation involving 5 kilograms or more of cocaine was a statutory mandatory minimum of 120 months.  See 21 U.S.C. § 841(b)(1)(A)("In the case of a violation of subsection (a) … involving … 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine … , such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life…."").  The FSA amended § 841 to increase the quantities of crack cocaine necessary to trigger the mandatory minimums. It did not modify the

quantities of cocaine for which Velazquez was convicted of distributing.  Thus, the FSA did not alter the landscape of Velazquez's sentence.  This issue is without merit.

  **b.**  **Velazquez's claim that his sentence violates *Alleyne and Decamps***

 Velazquez also claims that his sentence is in violation of the Supreme Court decisions in *Alleyne v. United States*, 570 U.S. 99 (2013) and *Descamps v. United States*, 570 U.S. 254 (2013).  In *Alleyne*, the Supreme Court held that any fact that increases the mandatory minimum is an "element" of the offense and must be decided by a jury.  Alleyne was convicted of using or carrying a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A), which carries a 5-year mandatory minimum sentence.  If the firearm is brandished, the punishment is increased to a 7-year minimum, and if it is discharged, a 10-year minimum.  See 18 U.S.C. § 924(c)(1)(A)(ii) and (iii).  The jury did not find that Alleyne had brandished the firearm.  However, the district court found that he had and increased Alleyne's sentence to the 7-year minimum.  The Supreme Court reversed, holding that because the particular fact that the firearm was brandished increased the mandatory minimum sentence, it was an element that must be decided by the jury.

  In this case, Velazquez does not identify any fact that increased the mandatory minimum sentence as occurred in *Alleyne*.  Each of the mandatory minimums were directly related to the offense of conviction.  The jury convicted him of sufficient drug quantities that warranted a 10-year minimum as required by 21 U.S.C. § 841(b)(1)(A).  It also convicted him of three separate § 924(c) violations, each of which carries with it its own mandatory minimum sentences that must run consecutive to each other.  There were no additional facts the Court found that otherwise increased his sentence.  Because *Alleyne* does not apply, this issue is without merit.

  The same is true with *Descamps v. United States*, 570 U.S. 254 (2013).  In *Descamps,* the Supreme Court addressed when a particular offense qualifies as a violent felony under the Armed

Career Criminal Act, 18 U.S.C. § 924(e). Velazquez was not sentenced under the Armed Career Criminal statute. Because he was not sentenced as an Armed Career Criminal, *Descamps* is inapplicable. This issue is also without merit.

      c.      **Velazquez's claim that *Johnson v. United States*, 135 S. Ct. 2551 (2015) requires a reduction in his sentence.**

Velazquez argues that the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), invalidating the residual clause of the Armed Career Criminal Act, entitles him to a reduction of his sentence [Doc. 1217, p. 13]. Velazquez makes no showing that *Johnson* applies to him. Velazquez was not sentenced as an Armed Career Criminal, nor as a career offender, nor was his sentence enhanced under any "crimes of violence" provisions. In short, Velazquez's argument that *Johnson* somehow invalidates his sentence or entitles him to a lower sentence is without merit.

Velazquez also cites multiple cases that have no bearing on his case. Velazquez cites *Kimbrough v. United States*, 552 U.S. 85 (2007), *Gall v. United States*, 552 U.S. 38 (2007), and *United States v. Booker*, 543 U.S. 220 (2005), to illustrate that the sentencing guidelines are advisory only. All of this is true, but it ignores the fact that he was sentenced to a statutory mandatory minimum that was below his sentencing guideline range. That the guidelines are advisory does nothing to change the fact that Velazquez was sentenced under the statute to the mandatory minimum term of imprisonment.

      d.      **Velazquez's claim that his sentence is unreasonable and violates the Eighth Amendment's prohibition on imposing cruel and unusual punishment.**

As an initial matter, Velazquez has already raised this claim and litigated it before the Sixth Circuit when he challenged the reasonableness of his 780-month term of imprisonment. The Sixth Circuit found the sentence reasonable. Nothing has changed in the interim that would alter that

conclusion. For that reason alone, this issue is without merit.

That notwithstanding, the Eight Amendment "forbids only extreme sentences that are grossly disproportionate." *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (affirming a sentence of life imprisonment for a first-time offender who possessed 672 grams of cocaine); *see also United States v. Flowal*, 163 F.3d 956, 963 (6th Cir. 1998) (rejecting Eighth Amendment challenge to a life sentence mandated by 21 U.S.C. § 841(b)(1)(A) for defendant with two prior felony drug convictions).

The Sixth Circuit has already addressed the constitutionality of significant sentences under 18 U.S.C. § 924(c). In *United States v. Watkins*, 509 F.3d 277, 282 (6th Cir. 2007), the Court addressed an Eighth Amendment challenge to a 1,772 month term of imprisonment. It noted that "§ 924(c) makes clear, firearms convictions may not run concurrently with any other term of imprisonment, including the term of imprisonment imposed for the underlying offense." *Id.* The Sixth Circuit observed that it has never found that consecutive sentencing under § 924(c) is unconstitutional. In fact, it went on to observe that it has rejected Eighth Amendment cruel and unusual punishment arguments in other cases. *Id.* at 282 (citing *United States v. Beverly*, 369 F.3d 516, 537 (6th Cir. 2004)). Velazquez's sentence was both prescribed by statute and not grossly disproportionate to his offense conduct. Velazquez was an armed participant in a large-scale drug-trafficking operation. His sentence was neither unreasonable nor in violation of the Eighth Amendment's prohibition against cruel and unusual punishments. This issue is without merit.

e.      **Velazquez's claim that he received ineffective assistance of counsel**

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In order to prevail on a claim of ineffective assistance of counsel, Velazquez must demonstrate

both that counsel's performance was deficient, or that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed" by the Sixth Amendment, and that this deficient performance prejudiced the petitioner. *Id*. at 687. This showing requires that defense counsel's errors were so serious as to deprive the defendant of a fair and reliable trial. *Id*.

"Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 599 U.S. 356, 371 (2010). Given the difficulties inherent in determining whether an attorney's performance was constitutionally deficient, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance...." *Strickland*, 466 U.S. at 689. Nevertheless, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. In order to establish prejudice, Velazquez must demonstrate a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

In this case, Velazquez has failed to identify how he received ineffective assistance of counsel. He does not identify anything in particular that he alleges his counsel did or failed to do that resulted in him being prejudiced. Rather, he only make conclusory remarks. "[C]onclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding." *Davis v. United States*, No. 1:08-CV-967, 2009 WL 1874173, at *3 (W.D. Mich. June 25, 2009) (citations omitted).

> **f.    Velazquez's claim that the Second Amendment protects his right to bear arms and precludes a conviction under 18 U.S.C. §§ 922(g).**

Velazquez argues that 18 U.S.C. 922(g)(5) is "facial unconstitutional," [Doc. 1217, p. 39], because the Supreme Court's decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008), protects his Second Amendment right to bear arms. Velazquez was convicted under 18 U.S.C. §

922(g)(5), which makes it a crime for an alien who is illegally or unlawfully in the United States from possessing a firearm.

The Second Amendment provides that "the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. 2. In *Heller*, 554 U.S. at 595, the Supreme Court recognized that the Second Amendment confers "an individual right to keep and bear arms." "Like most rights, the right secured by the Second Amendment is not unlimited." *Id.* at 626. The right does not include the "right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* (internal citation omitted). "Consistent with the historical understanding of the right to keep and bear arms, several courts, including the Supreme Court in *Heller*, have recognized that the right to keep and bear arms is for lawful purposes." *United States v. Greeno*, 679 F.3d 510, 520 (6th Cir. 2012). The Second Amendment did not extend protection to the possession of firearms for unlawful purposes. *Id.* "To hold the contrary would suggest that the Second Amendment protects an individual's right to possess a weapon for criminal purposes. Nothing in *Heller*, the common law, or early case law suggests such a reading." *Greeno*, 679 F.3d at 520; see also *United States v. Helton*, 86 F.App'x 889, 891-92 (6th Cir. 2004).

The issue that Velazquez presents is whether illegal aliens are included within the scope of the Second Amendment. He has cited to no authority that would permit that. Other Circuits that have addressed this issue have held that they are not so included. See *United States v. Carpio-Leon*, 701 F.3d 974, 979 (4th Cir. 2012) ("illegal aliens do not belong to the class of law-abiding members of the political community to whom the Second Amendment gives protection"); *United States v. Portillo-Munoz*, 643 F.3d 437, 442 (5th Cir. 2011) ("the phrase 'the people' in the Second Amendment of the Constitution does not include aliens illegally in the United States"); *United States v. Flores*, 663 F.3d 1022, 1023 (8th Cir. 2011) ("the protections of the Second Amendment

do not extend to aliens illegally present in this country"). While the Sixth Circuit has not addressed this issue, Velazquez has not presented any argument that would change the landscape of the law in this regard. In any event, even if Velazquez was successful on this claim, his sentences on counts 133 and 134, that is, possession of a firearm as an alien who is present in the United States illegally or unlawfully, ran concurrent with his other convictions. It would have no impact on his ultimate sentence. He still was sentenced to the statutory mandatory minimums on the other convictions. This issue is without merit.

  **g.** **Velazquez's claim that law enforcement violated the Fourth Amendment by using a confidential informant to record the drug deal in his residence.**

  "Though free-standing Fourth Amendment claims cannot be raised in collateral proceedings under either § 2254 or § 2255, the merits of a Fourth Amendment claim still must be assessed when a claim of ineffective assistance of counsel is founded on incompetent representation with respect to a Fourth Amendment issue." *Ray v. United Sta*tes, 721 F.3d 758, 762 (6th Cir. 2013). Where defense counsel's "failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, [Velazquez] must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). He is unable to do so.

  Turning to his Fourth Amendment claim, Velazquez argues that law enforcement cannot use a confidential informant with a recording device to enter his home and record the drug deal. He claims that the Fourth Amendment has "drawn a firm line at the entrance to the house absent exigent circumstances." [Doc. 1217, pg. 15]. Velazquez confuses the prohibition on law enforcement from entering a residence without a warrant and without consent with a resident inviting a confidential informant to witness criminal activity. They are not the same. The Court

notes that Velazquez invited the confidential informant into his house. This was not a situation where law enforcement barnstormed his residence without a warrant. Instead, the CI simply entered Velazquez's residence where Velazquez made arrangements to sell cocaine. This issue is without merit.

Velazquez also argues the government committed a Fourth Amendment violation by effecting his arrest in his home without a warrant [Doc. 1217, p. 32]. Velazquez cites to *Payton v. New York*, 445 U.S. 573 (1980), a Supreme Court case dealing with a warrantless entry by law enforcement into a private residence to make a warrantless arrest. Velazquez's reliance on *Payton* is misplaced. In the present case, law enforcement had a valid arrest warrant which had been issued on October 15, 2010, one week before Velazquez's arrest [Doc. 169]. Even the Supreme Court in *Payton* acknowledged that an arrest warrant would have sufficed for entry into the suspect's home if law enforcement had a reason to believe the suspect was present there. *Payton*, 445 U.S. at 603 ("Thus, for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within"). Because a valid arrest warrant was issued in this case, Velazquez's complaint is without merit.

### h. Velazquez's claim that convictions for the substantive sales of cocaine and conspiracy to distribute cocaine violates the Double Jeopardy Clause as does his multiple convictions for violations of § 924(c).

Velazquez argues that multiple convictions under the same statute—§ 924(c)—violate the Double Jeopardy Clause [Doc. 1217, p. 24-25]. He also argues that the Double Jeopardy Clause was violated because he was convicted of both conspiracy to distribute and the sale of the same cocaine and based on the multiple convictions under § 924(c)(1)(A). *Id.*

"The Double Jeopardy Clause of the Fifth Amendment…protects against successive prosecutions for the same offense after acquittal or conviction and against multiple criminal punishments for the same offense." *Monge v. California*, 524 U.S. 721, 727-28 (1998) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)). In this case in particular, the § 924(c)(1)(A) convictions do not violate the Double Jeopardy Clause because the offenses occurred on different days. Count 54's offense date was April 27, 2010; count 106's offense date was October 6, 2010; and count 132's offense date was October 22, 2010. Thus, the Double Jeopardy Clause is not implicated regarding the § 924 convictions.

Petitioner's argument that the Double Jeopardy Clause forbids a conviction for conspiracy and for substantive sales is also without merit. The Sixth Circuit has long since resolved this issue. The Sixth Circuit has held that "A substantive crime and a conspiracy to commit that crime are not the 'same offense' for purposes of double jeopardy, even if based upon the same underlying indictments, 'because the essence of a conspiracy offense is in the agreement or confederation to commit a crime.'" *Murr v. United States*, 200 F.3d 895, 902 (6th Cir. 2000) (quoting *United States v. Medina*, 992 F.2d 573, 588 (6th Cir.1993)). Thus, this issue is without merit.

i.    **Velazquez's claim that his Sixth Amendment right to a speedy trial and the Speedy Trial Act were violated.**

Velazquez argues that his Sixth Amendment right to a speedy trial was violated [Doc. 1217, 29-31]. Velazquez argues that the delay from his arrest on October 22, 2010 to the conclusion of his trial on August 24, 2012, amounts to a "complete miscarriage of justice" and a violation of the Sixth Amendment. *Id.* at 30.

The Sixth Amendment provides that "the accused shall enjoy the right to a speedy and public trial." *U.S. Const. amend. VI*. This Clause is "an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public

accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself." *United States v. Marion*, 404 U.S. 307, 320 (1971) (internal quotation marks and citations omitted). Courts must balance four factors to determine whether a delay violated the Sixth Amendment right to a speedy trial: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). "No one factor is determinative; rather, they are related factors which must be considered together with such other circumstances as may be relevant." *United States v. Robinson*, 455 F.3d 602, 607 (6th Cir. 2006).

In this case, Velazquez was arrested on October 22, 2010 [Doc. 4], and did not proceed to trial until August 21, 2012. However, it appears there were good reasons for this case proceeding to trial when it did. The Court scheduled the trial as soon as all the defendants made their initial appearance and no motion to sever was ever filed by either Velazquez or any of his co-defendants. [Doc. 255]. On October 4, 2011, Velazquez entered a plea agreement [Doc. 587]. On November 3, 2011, his attorney requested a psychiatric examination because he was exhibiting signs of "disassociation, incomprehension, severe depression, and delusions." [Doc. 648]. On November 8, 2010, the Court granted that motion and ordered a psychiatric evaluation [Doc. 655]. A competency hearing was then scheduled for March 13, 2011, when the Court found that he was competent to stand trial [Doc. 821]. At that time, the Court scheduled his trial for April 2, 2012. Then, Velazquez's counsel moved to continue the trial and the Court granted the motion and continued trial until June 11, 2012 [Doc. 822]. Velazquez then requested new counsel, who then asked for additional time to prepare the case for trial [Doc. 912]. The Court continued the trial until August 21, 2012 [Doc. 935].

The Court finds no Sixth Amendment violation in this case. Petitioner did not ever assert his right to a speedy trial under the Sixth Amendment. Moreover, he points to no prejudice whatsoever that he suffered as a result of the case being tried on August 21, 2012. Moreover, the Court finds that the reasons for the delay were largely caused by him and not anyone else. He needed additional time to prepare for trial, and there was reasonable cause to believe he may have been incompetent, which required a period of time to conduct a forensic examination.

The same conclusion is reached for any alleged violation under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.* The Court made specific findings each time the case was continued that properly excluded the time from the speedy trial clock. Specifically, the Court found that "the ends of justice served by granting of this continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7). Other than bald conclusory statements, Velazquez does not argue that his trial occurred outside the confines of the Speedy Trial Act. This issue is without merit.

### j. Velazquez's claim that his Sixth Amendment right to confrontation was violated.

While Velazquez's argument here is largely incomprehensible, the Court has reviewed the record and finds this issue without merit. Velazquez argues that the government's use of a confidential informant, both in the investigation and at trial, violates the Confrontation Clause. The Sixth Circuit reviewed this claim on direct appeal and found it lacking in merit:

> Federal Rule of Evidence 801(d)(2)(E) excludes from the definition of hearsay a statement "made by the party's coconspirator during and in furtherance of the conspiracy" and offered against that party. A statement furthers the conspiracy "'if it is intended to promote the objectives of the conspiracy.'" *United States v. Corona,* 493 F. App'x 645, 651 (6th Cir. 2012) (quoting *United States v. Clark*, 18 F.3d 1337, 1342 (6th Cir. 1994)), cert. denied, 133 S. Ct. 1268 (2013).

> Prior to trial, Velazquez moved to exclude recorded statements by Stacey Williams, a coconspirator, and "Tio," an unindicted co-conspirator, as hearsay. The statements involved drug trafficking and were captured in the recordings made by the CI. Relying on Rule 801(d)(2)(E), the district court denied Velazquez's motion. Even assuming, arguendo, that the district court should have excluded these two co-conspirators' statements, Velazquez has not established prejudice. His own incriminating statements during the conversations were admissible against him under Federal Rule of Evidence 801(d)(2)(A). Moreover, as the above-noted evidence makes clear, the government presented other substantial evidence of Velazquez's participation in the underlying conspiracy. *See* Fed. R. Crim. P. 52(a)

[Doc. 1135, p. 5]. Velazquez has not raised any new arguments on these claims to warrant further review. It is without merit.

**k**.     **Velazquez's claim that *United States v. Holloway*, 68 F.Supp.3d 301 (E.D.N.Y. 2014) mandates a reversal of his convictions under 18 U.S.C. § 924(c).**

Velazquez contends that he is entitled to relief similar to that offered to the petitioner in *United States v. Holloway*, 68 F.Supp. 3d 301 (E.D.N.Y. 2014). Francois Holloway was convicted of three carjackings and sentenced to 691 months' imprisonment under then mandatory guidelines and statutory minimums. *Id*. at 313. Twenty years later, Holloway had incurred only five minor disciplinary infractions. *Id.* at 314. In an exceptional case, the United States agreed to vacate two of Holloway's § 924(c) convictions. *Id.* at 316-17 ("[T]he authority exercised in this case will be used only as often as the Department of Justice itself chooses to exercise it, which will no doubt be sparingly").

Unlike Holloway, the United States has not agreed to exercise its discretion in this case as it did in *Holloway*. According to the government, the Bureau of Prisons sanctioned Velazquez for his possession of a sharpened piece of metal with a handle [Doc. 1198, p. 7]. And unlike Holloway, who participated in a two-day carjacking spree, Velazquez was a participant in a long-term drug-trafficking conspiracy. Congress mandated a minimum sentence for the crimes Velazquez committed. Velazquez's reliance on *Holloway* to justify vacating his convictions is

without merit. The United States has reviewed his request and has declined to agree to vacate his multiple convictions under § 924(c).

      **l.**      **Velazquez's claim that use of translated transcripts was a violation of due process.**

Velazquez argues the Court erred in allowing translations of various audio and video recordings that were not exact literal changes [Doc. 1217, p. 28]. Timothy Goring, a linguist from the Federal Bureau of Investigation, reviewed and translated recordings in this case. Goring testified that he made certain changes to the translations to make them sound more natural and because certain words and phrases do not have exact equivalencies in the English language.

Translations that are not purely literal are still acceptable evidence in court. *See United States v. Garcia,* 20 F.3d 670 (6th Cir. 1994) (affirming use of transcript that was not purely literal because it departed only so idioms and other forms of speech would make sense in English). In order to prevail, a petitioner should show inaccuracies or make an offer of a substitute transcript. *Id.* at 673, citing *United States v. Cruz*, 765 F.2d 1020, 1023 (11th Cir. 1985) (defendant cannot complain if he does not offer a substitute version of transcript).

In the present case, Velazquez makes no such showing. Velazquez simply complains that the transcript was changed, but does not point to any perceived inaccuracies, nor does he offer an alternative translation. Velazquez's complaints about the translations of certain recordings are meritless.

# V.     **CONCLUSION**

Because all claims raised in this § 2255 motion are meritless, the Court will **DENY** the motion [Doc. 1184]. Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth

Circuit Court of Appeals disapproves of the issuance of blanket denials of certificates of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Id*.

A certificate of appealability should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473 (2000). Having examined each of petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that the dismissal of his claims was debatable or wrong. Therefore, the Court will **DENY** a certificate of appealability.

A separate judgment will enter.


**IT IS SO ORDERED.**

ENTER:


<u>s/ Leon Jordan</u>
United States District Judge